# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

IN RE: BOSTON SCIENTIFIC CORP.,
     PELVIC REPAIR SYSTEM
     PRODUCTS LIABILITY LITIGATION

MDL No. 2326

-----------------------------------------------------------------

THIS DOCUMENT RELATES TO THE FOLLOWING CASE:

*Bertie Frankum v. Boston Scientific Corp.*          No. 2:12-cv-00904

## MEMORANDUM OPINION AND ORDER
### (*Defendant's Motion for Partial Summary Judgment*)

Pending before the court is defendant Boston Scientific Corporation's ("BSC") Motion for Partial Summary Judgment on Plaintiff Bertie Frankum's Punitive Damages Claim ("Motion for Partial Summary Judgment") [Docket 43]. For the reasons set forth below, the defendant's Motion for Partial Summary Judgment [Docket 43] is **DENIED**.

## I.      Background

This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). In the seven MDLs, there are more than 70,000 cases currently pending, approximately 15,000 of which are in the BSC MDL, MDL 2326. In an effort to efficiently and effectively manage this massive MDL, I decided to conduct pretrial discovery and motions practice on an individualized basis so that once a case is trial-ready (that is, after the court has ruled on all *Daubert* motions, summary judgment motions, and motions *in limine*, among other things), it can then be promptly transferred or remanded to the appropriate

district for trial. To this end, I ordered the plaintiffs and defendant to each select 50 cases, which would then become part of a "wave" of cases to be prepared for trial and, if necessary, remanded. (*See* Pretrial Order # 65, *In re: Boston Scientific Corp. Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:12-md-002326, entered Dec. 19, 2013, *available at* http://www.wvsd.uscourts.gov/MDL/boston/orders.html). This selection process was completed twice, creating two waves of 100 cases, Wave 1 and Wave 2. Ms. Frankum's case was selected as a Wave 1 case by the defendant.

Plaintiff Bertie Frankum was surgically implanted with the Obtryx Transobturator Mid-Urethral Sling System ("Obtryx") on February 9, 2009. (BSC's Mot. for Partial Summ. J. & Mem. of Law in Supp. ("Mem. in Supp.") [Docket 43], at 8). She received the surgery at a hospital in Shelby, North Carolina. (*Id.*). Ms. Frankum claims that as a result of implantation of the Obtryx, she has experienced multiple complications, including vaginal pain, dyspareunia, and bleeding with intercourse. (Pls.' Resp. in Opp'n to BSC's Mot. for P. Summ. J. & Mem. of Law in Supp. ("Resp. Mem. in Supp.") [Docket 68], at 4). She brings the following claims against BSC: strict liability for design defect, manufacturing defect, and failure to warn; negligence; breaches of express and implied warranties; and punitive damages. (Compl. [Docket 1]). In the instant motion, BSC moves for partial summary judgment on the grounds that Ms. Frankum's "claim for punitive damages is . . . without evidentiary or legal support." (Mem. in Supp. [Docket 43], at 1).

## II. Legal Standards

### a. Partial Summary Judgment

A partial summary judgment "is merely a pretrial adjudication that certain issues shall be deemed established for the trial of the case." Fed. R. Civ. P. 56 advisory committee's note. A motion for partial summary judgment is governed by the same standard applied to consideration

of a full motion for summary judgment. *See Pettengill v. United States*, 867 F. Supp. 380, 381 (E.D. Va. 1994) (citing *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985)). To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor," *Anderson*, 477 U.S. at 256, that is, more than a mere "scintilla of evidence" in support of his or her position, *id.* at 252. Conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013); *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997).

### b. Choice of Law

Under 28 U.S.C. § 1407, this court has authority to rule on pretrial motions in MDL cases such as this. The choice of law for these pretrial motions depends on whether they involve federal or state law. "When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located. When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation." *In re Temporomandibular Joint (TMJ) Implants Prods.*

*Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) (internal citations omitted). In cases based on diversity jurisdiction, the choice-of-law rules to be used are those of the states where the actions were originally filed. *See In re Air Disaster at Ramstein Air Base, Ger.*, 81 F.3d 570, 576 (5th Cir. 1996) ("Where a transferee court presides over several diversity actions consolidated under the multidistrict rules, the choice of law rules of each jurisdiction in which the transferred actions were originally filed must be applied."); *In re Air Crash Disaster Near Chi., Ill.*, 644 F.2d 594, 610 (7th Cir. 1981); *In re Digitek Prods. Liab. Litig.*, MDL No. 2:08-md-01968, 2010 WL 2102330, at *7 (S.D. W. Va. May 25, 2010). If a plaintiff files her claim directly into the MDL in the Southern District of West Virginia, however, as Ms. Frankum did in this case, I consult the choice-of-law rules of the state in which the implantation surgery took place. *See Sanchez v. Boston Scientific Corp.*, 2:12-cv-05762, 2014 WL 202787, at *4 (S.D. W. Va. Jan. 17, 2014) ("For cases that originate elsewhere and are directly filed into the MDL, I will follow the better-reasoned authority that applies the choice-of-law rules of the originating jurisdiction, which in our case is the state in which the plaintiff was implanted with the product."). Ms. Frankum received the implantation surgery in North Carolina. Thus, the choice-of-law principles of North Carolina guide this court's choice-of-law analysis.

The parties agree, as does this court, that these principles compel application of North Carolina law. North Carolina generally applies the *lex loci delicti* approach, which provides that "the state where the injury occurred is considered the situs of the claim." *Harco Nat'l Ins. Co. v. Grant Thornton LLP*, 698 S.E.2d 719, 722–23 (N.C. App. 2010). Here, the alleged injury occurred in North Carolina, where Ms. Frankum was implanted with the allegedly defective device. Thus, I apply North Carolina's substantive law—including North Carolina's punitive damages law—to this case.

## III. Analysis

Ms. Frankum has failed to respond to BSC's Motion for Partial Summary Judgment.[1] Nonetheless, Ms. Frankum has provided the court with 467 pages of exhibits that I assume she intended to complement her absent response. Accordingly, I assess BSC's Motion for Summary Partial Summary Judgment in light of Ms. Frankum's exhibits as well as the arguments set forth by BSC.

Under North Carolina law, "[p]unitive damages may be awarded only if the claimant proves that the defendant is liable for compensatory damages *and* that one of the following aggravating factors was present and was related to the injury . . . . : (1) [f]raud; (2) [m]alice; [or] [w]illful or wanton conduct." N.C. Gen. Stat. § 1D-15 (emphasis added). Critically, the claimant must prove the existence of an aggravating factor—including its connection to the injury—by clear and convincing evidence. *Id.*; *see also Schneck v. HNA Holdings, Inc.*, 613 S.E.2d 503, 508 (N.C. App. 2008) (holding that the plaintiffs did not present clear and convincing evidence of the connection between the alleged wrongful act and plaintiffs' alleged harm).

Fraud requires proof of: "(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Wilson v. Dryvit Sys., Inc.*, 206 F. Supp. 2d 749, 755 (E.D.N.C. 2002), *aff'd*, 71 F. App'x 960 (4th Cir. 2003). Malice "means a sense of personal ill will toward the claimant that activated or incited the defendant to perform the act or undertake the conduct that resulted in harm to the claimant." N.C. Gen. Stat. § 1D-5(5). For conduct to be willful or wanton, it must create a "conscious and intentional disregard of and indifference to the rights

---

[1] In what I presume to be an error, Ms. Frankum filed the exact document she filed in response to BSC's Motion for Summary Judgment as her response to BSC's Motion for Partial Summary Judgment. (*See* Pl.'s Resp. in Opp'n to BSC's Mot. for Partial Summ. J. & Mem. of Law in Supp. [Docket 68]).

and safety of others," and the conduct must be more than gross negligence. N.C. Gen. Stat. § 1D-5(7).

BSC first argues that the record is void of evidence that supports a finding of either fraud or malice. I agree. With regard to fraud, Ms. Frankum admitted in her deposition that she did not reply upon any representations made by BSC to evaluate the risks and benefits of the Obtryx, but, instead, upon Dr. Blackley, the implanting physician. (Frankum Dep. [Docket 43-19], at 69:15–69:18). Dr. Blackley, however, admitted that he did not review the Obtryx DFU, (Dr. Blackley Dep. [Docket 74-2], at 29:7–29:11), and instead relied on his clinical training to determine the appropriate treatment. (Dr. Blackley Dep. [Docket 43-16], at 63:7–63:20). Accordingly, even if BSC made a false representation to Ms. Frankum or Dr. Blackley, the record fails to demonstrate that such a representation deceived Ms. Frankum. *See Wilson*, 206 F. Supp. 2d at 755. With regard to malice, the record fails to reveal conduct on behalf of BSC demonstrating "a sense of personal ill" toward Ms. Frankum. *See* N.C. Gen. Stat. § 1D-5(5).

BSC next argues that, with regard to any claim of willful or wanton conduct, Ms. Frankum "has done no more than rehash the allegations of her other tort claims." (Mem. in Supp. [Docket 43], at 14). In support of its argument that such evidence is insufficient for a reasonable juror to award punitive damages, BSC argues that, under North Carolina law, "there must be some additional element of asocial behavior [that] goes beyond the facts necessary to create a simple case of tort." (*Id.* (citing *Shugar v. Guill*, 277 S.E.2d 126, 130 (N.C. App. 1981))). BSC further points out that punitive damages against a corporation are permissible only if "the officers, directors, or managers of the corporation participated in or condoned the conduct constituting the aggravating factor giving rise to punitive damages." (*Id.* (quoting N.C. Gen. Stat. § 1D-15(c)).

BSC, however, neglects to observe the Material Data Safety Sheet ("MSDS") issued by

6

BSC's supplier of polypropylene in 2004. Importantly, in *Sanchez v. Boston Scientific Corp.*, No. 2:12-CV-05762, 2014 WL 4059214, at \*13 (S.D. W. Va. Aug. 18, 2014), I decided that "[a] reasonable jury could find that by ignoring a warning on the MSDS and failing to conduct clinical testing, BSC's actions were 'despicable conduct' with willful and conscious disregard of the safety of consumers." Although *Sanchez* did not apply North Carolina law, its reasoning applies with equal force here.

As in *Sanchez*, the MSDS at issue here warned BSC not to implant the material into the human body. (MSDS issued by Chevron Phillips Chemical Company, LP for Marlex Polypropylenes (All Grades) (Jan. 28, 2004) [Docket 68-1], at 62). Specifically, the warning provided:

> MEDICAL APPLICATION CAUTION: Do not use this Chevron Phillips Chemical Company LP material in medical applications involving permanent implantation in the human body or permanent contact with internal body fluids or tissues.

*Id.* Despite this warning, BSC used Chevron Phillips polypropylene in the Obtryx device. (*See* Biocompatibility Assessment Form for Polypropylene 6 mil Fiber Supplier Change for Sling Device Mesh [Docket 68-1], at 49 (listing the Obtryx as a device using 6 mil polypropylene fibers)).

In light of this evidence, I **FIND** that there is a genuine dispute of material fact with regard to the existence of an aggravating factor under North Carolina General Statute § 1D-15. Indeed, even under a clear and convincing standard, a reasonable juror could find that by ignoring a warning on the MSDS, BSC's actions were taken with a "conscious and intentional disregard of and indifference to the rights and safety of others." N.C. Gen. Stat. §§ 1D-5(7), 1D-15. Accordingly, BSC's motion for summary judgment on the issue of punitive damages is **DENIED**.

**IV.    Conclusion**

For the reasons set forth above, the defendant's Motion for Partial Summary Judgment [Docket 43] is **DENIED.**

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        April 2, 2015

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE